UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WAYNE WANG,

        Petitioner,

                               CASE NO. 2:08-CV-10832
v.                           JUDGE STEPHEN J. MURPHY, III
                               MAGISTRATE JUDGE PAUL J. KOMIVES

BARBARA SAMPSON,

        Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
         1.    *AEDPA Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
         2.    *Constitutionality* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
             a.  Separation of Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
             b.  Supremacy Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    C.    *Waiver by Guilty Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    D.    *Constitutionality of Child Abusive Material and Internet Communication Statutes* . . . . . . . . . 13
         1.    *Governing Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    E.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 22
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

\*      \*      \*      \*      \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a

---

[1]By Order entered this date, Barbara Sampson has been substituted in place of Carol R. Howes as the proper respondent in this action.

certificate of appealability.

II.    REPORT:

A.    *Procedural History*

Petitioner Wayne Wang is former state prisoner who, at the time this petition was filed, was incarcerated at the Florence Crane Correctional Facility in Coldwater, Michigan. According to the Michigan Department of Corrections Offender Tracking Information System Website, petitioner was released on parole on November 24, 2009.[2]

On March 24, 2005, petitioner was arrested and charged in the Wayne County Circuit Court with child sexually abusive activity, MICH. COMP. LAWS § 750.145c(2); using the internet to communicate with another to commit a crime, MICH. COMP. LAWS § 750.145d(2)(f); and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. The charges against petitioner arose from internet conversations he had with an undercover Wayne County Deputy Sheriff posing a 13-year-old female using the screen name "spyyder_girl". After the exchange of a number of instant messages (IM), petitioner and spyuder_girl made various sexual propositions to each other, and arranged to meet at a bowling alley in Taylor, Michigan. Upon arriving at the bowling alley, petitioner was arrested by several officers. When asked by the

---

[2]Petitioner's release on parole does not deprive this Court of jurisdiction. "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis supplied by Court); *see also*, 28 U.S.C. § 2254(a). This requires "that the habeas petitioner be 'in custody' *under the conviction or sentence under attack* at the time his petition is filed." *Maleng*, 490 U.S. at 490; *see also, Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). Petitioner is "in custody" here because (a) a petitioner on parole is "in custody" for purposes of habeas corpus, *Jones v. Cunningham*, 371 U.S. 236, 240-41 (1963); *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993), and (b) jurisdiction is not defeated where the petitioner is in custody at the time the petition is filed, *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968); *York v. Tate*, 858 F.2d 322, 324 (6th Cir. 1988).

arresting officers if he had any weapons, petitioner volunteered that he had a concealed carry permit and had a firearm in the center console in his truck. The officers found and secured the firearm. *See* Prelim. Exam. Tr., at 24-34, 42-43, 66.

After he was bound over to the circuit court for trial, petitioner moved to quash the bindover on the grounds that the statutes under which he was being charged are unconstitutional. Petitioner also filed a motion to dismiss the charges on the basis of entrapment. After those motions were denied by the trial court, petitioner sought leave to file an interlocutory appeal, raising the following claims:

I.  THIS COURT SHOULD GRANT INTERLOCUTORY REVIEW IN THIS CASE BECAUSE THE ISSUES INVOLVE IMPORTANT AND UNRESOLVED QUESTIONS OF MICHIGAN LAW, AND EACH OF THE ISSUES INVOLVED IS ONE THAT EITHER IS REQUIRED TO BE BROUGHT AS AN INTERLOCUTORY APPEAL, WOULD PRECLUDE THE NECESSITY OF A TRIAL, OR RELATES TO WHETHER THE DEFENDANT'S CONDUCT FALLS UNDER THE STATUTE.

II.  THE LOWER COURT'S RULING DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE MOTION *IN LIMINE* SHOULD BE REVERSED WHERE THAT COURT CLEARLY ERRED IN RULING THE DEFENDANT'S CONDUCT SATISFIED THE SUBSTANTIVE PROHIBITION EMBODIED IN THE CHILD SEXUALLY ABUSIVE ACTIVITY STATUTE, MCL 750.145C(2)

III.  THE LOWER COURT'S RULING DENYING DEFENDANT'S MOTION FOR AN ENTRAPMENT HEARING SHOULD BE REVERSED WHERE THAT COURT CLEARLY ERRED IN RULING THAT THE LAW ENFORCEMENT OFFICER'S CONDUCT DID NOT RISE TO THE LEVEL OF ENTRAPMENT.

IV.  THE LOWER COURT'S RULING DENYING DEFENDANT'S MOTION TO DISMISS SHOULD BE REVERSED WHERE THERE IS INSUFFICIENT EVIDENCE ON THE RECORD THAT DEFENDANT HARBORED THE NECESSARY *MENS REA* REQUIRED TO COMMIT THE CHARGED OFFENSE.

V.  THE LOWER COURT'S RULING DENYING DEFENDANT'S MOTION

TO QUASH SHOULD BE REVERSED WHERE THAT COURT CLEARLY ERRED IN RULING THAT DEFENDANT'S CONDUCT SATISFIED THE *ACTUS REUS* OF THE FELONY FIREARM CHARGE.

VI.     THE LOWER COURT'S RULING DENYING DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO SHOULD BE REVERSED WHERE THE STATUTES VIOLATE THE FEDERAL AND STATE CONSTITUTIONS.

The Michigan Court of Appeals denied petitioner's application for leave to file an interlocutory appeal in a standard order. *See People v. Wang*, No. 265119 (Mich. Ct. App. Oct. 21, 2005). Petitioner did not appeal this denial to the Michigan Supreme Court.

On November 3, 2005, following the denial of his interlocutory appeal, petitioner pleaded guilty pursuant to an agreement with the prosecution. Pursuant to the agreement, petitioner pleaded guilty to the internet communication and felony-firearm counts, in exchange for dismissal of the child sexually abusive activity count. The plea deal also included a sentencing agreement of 1-20 years' imprisonment on the internet communication count and a mandatory consecutive term of 2 years' imprisonment on the felony-firearm count, for a total term of 3-20 years' imprisonment. *See* Plea Tr., at 5. The court explained to petitioner the three charges he was facing and the potential punishment associated with each charge, as well as the terms of the plea agreement. *See id*. at 4-5. Petitioner indicated that he understood the terms of the agreement, and denied that any one had made any promises other than those reflected in the agreement. *See id*. at 5. The court explained to petitioner each of the rights he was waiving by pleading guilty, and petitioner indicated that he understood those rights. *See id*. at 7-8. Petitioner again denied that anyone had threatened him or coerced his plea. *See id*. at 8. The trial court then elicited a factual basis for the internet communication charge. *See id*. at 8-9. After some concern expressed by the trial judge concerning whether the factual basis for the felony-firearm charge was established, the parties agreed that

4

petitioner would plead *nolo contendere* to this charge. *See id.* at 9-15. The court then accepted petitioner's plea. *See id.* at 15.

Following his plea, petitioner again filed an application for leave to appeal in the Michigan Court of Appeals, raising the same substantive claims that he had raised in his interlocutory appeal. The Michigan Court of Appeals denied petitioner's application in a standard order. *See People v. Wang*, No. 268895 (Mich. Ct. App. Apr. 17, 2006). Petitioner's subsequent application for leave to appeal to the Michigan Supreme Court was likewise denied in a standard order. *See People v. Wang*, 477 Mich. 952, 723 N.W.2d 897 (2006).

On February 28, 2008, petitioner, through counsel, filed the instant application for the writ of habeas corpus. Respondent filed an answer to the petition on September 8, 2008, and petitioner filed a brief in support of the petition on December 16, 2008. As set forth in his brief, petitioner raises two grounds for relief:

> I. THE MICHIGAN TRIAL COURT'S RULING DENYING THE PETITIONER'S MOTION TO DISMISS COUNTS ONE AND TWO WAS OBJECTIVELY UNREASONABLE AND LEGALLY AN INCORRECT INTERPRETATION OF THE FEDERAL CONSTITUTION WHERE THE STATE STATUTES CLEARLY VIOLATE THE FEDERAL CONSTITUTIONAL RIGHT TO FREE SPEECH AND DUE PROCESS.

> II. THE STATE COURT ERRED IN RETROACTIVELY APPLYING A BROADENING CONSTRUCTION OF THE FELONY-FIREARM STATUTE WHICH REJECTED THE REQUIREMENT OF A NEXUS REQUIREMENT BEYOND THE SCOPE OF THE PRIOR MICHIGAN APPELLATE DECISIONS.

Petitioner also argues that the standard of review set forth in 28 U.S.C. § 2254(d) is unconstitutional, and that the Court should therefore review his claims under a *de novo* standard. Respondent, in her answer, argues that petitioner waived his claims by pleading guilty, and that the claims are without merit.

B.      *Standard of Review*

    1.      *AEDPA Standard*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>       (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>       (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's

resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

2.      *Constitutionality*

Petitioner argues that the AEDPA standard or review set forth in § 2254(d) violates separation of powers principles and the Supremacy Clause of the Constitution. The Court should reject these challenges to § 2254(d).

*a. Separation of Powers*

Noting that "[i]t is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), petitioner argues that the amended § 2254(d)(1) violates the separation of powers by mandating the law to be applied by federal courts, removing their power to adjudicate constitutional issues. This argument was soundly rejected by the Fourth Circuit, which explained:

> In amending section 2254(d)(1), Congress has simply adopted a choice of law rule that prospectively governs classes of habeas cases; it has not subjected final judgments to revision, nor has it dictated the judiciary's interpretation of governing law and mandated a particular result in any pending case. And amended section 2254(d) does not limit any inferior federal court's independent interpretive authority to determine the meaning of federal law in any Article III case or controversy. Under the AEDPA, we are free, if we choose, to decide whether a habeas petitioner's conviction and sentence violate any constitutional rights. Section 2254(d) only places an additional restriction upon the scope of the habeas remedy in certain circumstances. *Lindh*, 96 F.3d at 872 ("[r]egulating relief is a far cry from limiting the interpretive power of the courts, however, and Congress has ample power to adjust the circumstances under which the remedy of the writ of habeas corpus is deployed."). As the Seventh Circuit pointed out in *Lindh* in great detail, such a limitation upon the scope of a remedy is entirely ordinary and unexceptionable, even when the remedy is one for constitutional rights. *See Lindh*, 96 F.3d at 870-73; *United States v. Leon*, 468 U.S. 897 (1984) (good faith exception to Fourth Amendment exclusionary rule); *Nix v. Williams*, 467 U.S. 431 (1984) (independent discovery doctrine); *Stone v. Powell*, 428 U.S. 465 (1976) (Fourth Amendment

claims that were capable of full and fair litigation in state court are not generally cognizable in federal habeas review); *Teague v. Lane*, 489 U.S. 288 (1989) (new rules not made retroactive are not cognizable on federal habeas review); *Anderson v. Creighton*, 483 U.S. 635 (1987) (qualified immunity to damages actions claiming official action violated constitutional liberties). Moreover, even if section 2254(d) does limit the interpretive power of the lower federal courts in some sense, that limitation is tantamount to other such choice of law limitations which are widely accepted and have never been thought to raise Article III problems. *See Lindh* at 870-73 (discussing non-constitutional contexts-such as res judicata, *Erie*, and federal court certification of state law issues-where federal courts are often bound by another tribunal's interpretation of law).

*Green v. French*, 143 F.3d 865, 874-75 (4th Cir. 1998) (parallel citations omitted), *abrogated on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000).

Or, as more succinctly stated by the Ninth Circuit, "[s]ection 2254(d) merely limits the source of clearly established law that the Article III court may consider, and that limitation served to govern prospectively class of habeas cases rather than offend the court's authority to interpret the governing law and to determine the outcome in any pending case." *Duhaime v. Ducharme*, 200 F.3d 597, 601 (9th Cir. 2000); *see also*, *Evans v. Thompson*, 518 F.3d 1, 4-10 (1st Cir. 2008). For these reasons, the Court should reject petitioner's claim that the AEDPA standard of review violates the separation of powers by encroaching on the Court's exercise of the judicial power.

### b. Supremacy Clause

Petitioner next argues that the AEDPA standard violates the Supremacy Clause, U.S. Const. art. VI, § 2. This claim is without merit. Nothing in the AEDPA subjugates the Constitution to state law. As the Supreme Court has often noted, the state courts, as co-equal guardians of federal constitutional rights, are perfectly capable of passing on federal constitutional questions. *See, e.g.*, *Rose v. Lundy*, 455 U.S. 509, 518 (1982); *Stone v. Powell*, 428 U.S. 465, 494 n.35 (1976); *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 341-44 (1816). And, under the Supremacy Clause, state

courts are obligated to enforce the Constitution above state law to the contrary. *See Howlett v. Rose*, 496 U.S. 356, 367-39 (1990); *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 340-41 (1816). Nothing in the AEDPA changes this rule of law. The AEDPA does, to be sure, require that federal courts give deference to the federal constitutional decisions of the state courts. This, however, does not offend the Supremacy Clause, which is "concerned with promoting the supremacy of federal law, not federal courts." *Nashoba Communications Ltd. Partnership No. 7 v. Town of Danvers*, 893 F.2d 435, 440 (1st Cir. 1990). In short, the AEDPA standard of review does not violate the Supremacy Clause because that Clause "is concerned about a conflict between state and federal law, not between state and federal judges. Indeed, to say, as the Clause does, that federal law shall be 'Supreme . . . any thing in the Constitution or laws of any State to the Contrary notwithstanding' is to say nothing at all about the respective roles of the state and federal courts." *Mueller v. Angelone*, 181 F.3d 557, 572 (4th Cir. 1999) (upholding § 2254(d)(1) against Supremacy Clause challenge); *see also*, *Evans*, 518 F.3d at 8 n.3. Accordingly, the Court should conclude that § 2254(d)(1) does not violate the Supremacy Clause.

C.      *Waiver by Guilty Plea*

Respondent argues that, by pleading guilty, petitioner has waived his ability to pursue his habeas challenges to the statutes under which he was convicted. The Court should reject this argument with respect to petitioner's constitutional challenges to the Michigan child sexually abusive material and internet communication statutes. However, the Court should conclude that petitioner's challenge to his felony-firearm conviction is barred by his guilty plea.

"It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United*

*States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Notwithstanding this general rule, the Supreme Court has also held that a guilty plea does not bar a constitutional challenge that "goes to the very power of the State to bring the defendant into court to answer the charge brought against him," *Blackledge v. Perry*, 417 U.S. 21, 29 (1974), at least to the extent that such a challenges is unrelated to the question of factual guilt established by virtue of the plea, *see Menna v. New York*, 423 U.S. 61, 63 n.2 (1975). Generally, a "claim that [the defendant] was prosecuted under an unconstitutional statute goes to the very power of the government to invoke criminal process against him, and is not barred by his guilty plea." *United States v. Gaertner*, 583 F.2d 308, 311 (7th Cir. 1978); *United States v. Broncheau*, 597 F.2d 1260, 1262 n.1 (9th Cir. 1979). This rule allows petitioner's First Amendment challenges to go forward.[3]

On the other hand, however, whether the felony-firearm statute constitutionally could be applied to petitioner's conduct does not raise a facial challenge, and appears to require "proof of additional factual evidence" which is "'foreclosed by the admissions inherent in'" petitioner's guilty plea. *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 482 (E.D. Va. 2005) (quoting *United States v. Broce*, 488 U.S. 563, 576 (1989). As explained by the Ninth Circuit, in *Broce* the Court, "[e]mphasizing

---

[3]Of course, because the child sexually abusive activity charge brought under § 750.145c(2) was dismissed as part of the plea bargain, there is a separate question as to whether petitioner can raise a constitutional challenge to this charge as affecting the validity of his plea pursuant to the agreement which resulted in the dismissal. The parties do not address this question, and I therefore assume that petitioner can proceed on his challenge to § 750.145c(2).

*Menna*'s holding that 'a plea of guilty to a charge does not waive a claim that- *judged on its face*-the charge is one which the State may not constitutionally prosecute,' the Court limited the doctrine to cases in which the judge could determine at the time of accepting the plea, from the face of the indictment or from the record, that the government lacked the power to bring the indictment." *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir. 1989) (citing *Broce*, 488 U.S. at 575-76 (quoting and emphasizing *Menna*, 423 U.S. at 63 n.2)). Here, petitioner's claim with respect to the felony-firearm conviction is that "the felony-firearm statute [cannot] be applied to his conduct[.]" Pet.'r's Br., at 11. Petitioner's entire argument on this claim is that the conduct established on the record at the guilty plea did not constitute possession of a firearm within the meaning of Michigan law at the time of his conviction. *See id*. at 11-12. Ultimately, however, this is precisely why petitioner pleaded *nolo contendere* rather than guilty to the felony-firearm charge, which required no establishment of a factual basis for the plea.

Petitioner's claim with respect to the felony-firearm conviction is that his conduct did not satisfy the statute as it had been interpreted by the Michigan courts at the time of his conduct, and that the application of the statute to his conduct represented a judicial expansion of the statute which was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964). To obtain relief on this claim, petitioner would be required to show that, in fact, his conduct was not made illegal by the then-existing interpretations of the felony-firearm statute that had been rendered by the Michigan courts. However, by entering his plea, petitioner effectively admitted that his conduct *did* violate the statute as it then existed. Thus, consideration of petitioner's claim would require the resolution of factual issues which were resolved by his plea. Resolving petitioner's claim requires the Court

to consider additional factual evidence, and such an inquiry is "foreclosed by the admissions inherent in" petitioner's *nolo contendere* plea. *Broce*, 488 U.S. at 576.[4] Essentially, petitioner

> seeks to avoid his sentence on the ground that an allegation of the indictment-namely, that he [possessed a firearm during the commission of a felony]-is contradicted by the evidence. By pleading guilty . . ., however, [petitioner] conclusively admitted the allegation. By seeking to contradict the plea, [petitioner] is, in effect, challenging the validity of the plea. He cannot prevail, because his challenge is to the factual basis of the plea-not to its consensual character.

*United States v. Mathews*, 833 F.2d 161, 165 (9th Cir. 1987) (citing *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984)). In other words, here "*Broce* controls" because petitioner "could not prove [his] allegations without an evidentiary hearing or trial testimony. On its face, the indictment alleged offenses that were well within the government's power to prosecute." *Montilla*, 870 F.2d at 553.

Accordingly, the Court should conclude that petitioner's facial challenges to §§ 750.145c(2) and 750.145d are nor foreclosed by his guilty plea. However, the Court should also conclude that petitioner's challenge to his felony-firearm conviction under § 750.227b, which at its core is nothing more than a challenge to the sufficiency of the evidence relating to that charge, is barred by his plea.

D.    *Constitutionality of Child Abusive Material and Internet Communication Statutes*

Petitioner contends that the child sexually abusive material and internet communication statutes under which he was charged (and the latter under which he was convicted) violate the First Amendment's guarantee of freedom of speech because they are overbroad, in that they

---

[4]Indeed, whether petitioner's conduct in fact violated the felony-firearm statute is irrelevant. As the Supreme Court explained in *North Carolina v. Alford*, 400 U.S. 25 (1971), "[i]mplicit in the *nolo contendere* cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence." *Id.* at 36. Here, petitioner was willing to waive trial on the felony-firearm charge as part of a plea deal limiting his potential imprisonment. As he does not contend that his decision to do so was in any way involuntary, he cannot now claim that his conduct did not violate the statute.

criminalizing, on the basis of their content, communications protected by the First Amendment. In support of his argument, petitioner relies primarily on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). For the reasons that follow, the Court should reject petitioner's constitutional challenge to §§ 750.145c(2) and 750.145d.

1.    *Governing Law*

The Supreme Court's development of the law governing petitioner's constitutional challenge, culminating in the Court's decision in *Free Speech Coalition*, was recently succinctly summarized by the Court:

> We have long held that obscene speech–sexually explicit material that violates fundamental notions of decency–is not protected by the First Amendment. *See Roth v. United States*, 354 U.S. 476, 484-485 (1957). But to protect explicit material that has social value, we have limited the scope of the obscenity exception, and have overturned convictions for the distribution of sexually graphic but nonobscene material. *See Miller v. California*, 413 U.S. 15, 23-24 (1973); *see also, e.g.*, *Jenkins v. Georgia*, 418 U.S. 153, 161 (1974).
>
> Over the last 25 years, we have confronted a related and overlapping category of proscribable speech: child pornography. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002); *Osborne v. Ohio*, 495 U.S. 103 (1990); *New York v. Ferber*, 458 U.S. 747 (1982). This consists of sexually explicit visual portrayals that feature children. We have held that a statute which proscribes the distribution of all child pornography, even material that does not qualify as obscenity, does not on its face violate the First Amendment. *See id.*, at 751-753, 756-764. Moreover, we have held that the government may criminalize the possession of child pornography, even though it may not criminalize the mere possession of obscene material involving adults. *Compare Osborne*, *supra*, at 111, *with Stanley v. Georgia*, 394 U.S. 557, 568 (1969).
>
> The broad authority to proscribe child pornography is not, however, unlimited. Four Terms ago, we held facially overbroad two provisions of the federal Child Pornography Protection Act of 1996 (CPPA). *Free Speech Coalition*, 535 U.S., at 258. The first of these banned the possession and distribution of "'any visual depiction'" that "'is, or appears to be, of a minor engaging in sexually explicit conduct,'" even if it contained only youthful-looking adult actors or virtual images of children generated by a computer. *Id.*, at 239-241 (quoting 18 U.S.C. § 2256(8)(B)). This was invalid, we explained, because the child-protection rationale for speech restriction does not apply to materials produced without children. *See* 535 U.S., at 249-251, 254. The second provision at issue in *Free Speech Coalition*

criminalized the possession and distribution of material that had been pandered as child pornography, regardless of whether it actually was that. *See id.*, at 257 (citing 18 U.S.C. § 2256(8)(D)). A person could thus face prosecution for possessing unobjectionable material that someone else had pandered. 535 U.S., at 258. We held that this prohibition, which did "more than prohibit pandering," was also facially overbroad. *Ibid.*

*United States v. Williams*, 553 U.S. 285, 288-89 (2008) (parallel citations omitted). To succeed on his facial overbreadth challenge, petitioner must do more than show that some hypothetical application of the statutes would violate the First Amendment. Rather, petitioner must show that the statutes "prohibit[] a substantial amount of protected speech," "not only in an absolute sense, but also relative to the statute[s'] plainly legitimate sweep." *Id.* at 292. "The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Id.* at 303 (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)).

2.    *Analysis*

Relying on this body of law, and in particular *Free Speech Coalition*, petitioner argues that §§ 750.145c(2) and 750.145d are overbroad, because they criminalize speech which does not involve actual children. For instance, petitioner argues, in this case petitioner's conduct was requesting sex from an undercover police officer who was in fact an adult, not a child. Petitioner argues that "[r]equesting sex of an adult, even one pretending to be a child, is . . . protected speech," Pet'r's Br., at 8, and that "the 'law enforcement officer' pretending to be a child in this case is legally indistinguishable from the virtual child in *Ashcroft*." *Id.* at 9. Petitioner's argument, however, reads the Court's decision in *Free Speech Coalition* too broadly.

As a number of courts have explained, *Free Speech Coalition* did nothing more than "invalidate only the criminalization of virtual pornography." *United States v. Wyatt*, 64 Fed. Appx.

350, 351 (4th Cir. 2003) (citing *United States v. Kelly*, 314 F.3d 908 (7th Cir. 2003); *United States v. Hersh*, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002)).  Nothing in *Free Speech Coalition* calls into question the Court's prior decisions holding that child pornography is not "speech" protected by the First Amendment.  The statutes at issue here are directed at pornography and sexual conduct involving real, as opposed to virtual, children.  The child sexually abusive material statute under which petitioner was charged provides that:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abuse activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony . . . .

MICH. COMP. LAWS § 750.145c(2).  Although the definition of "child sexually abusive material" includes virtual images, *see id*. § 750.145c(1)(m), as implemented in paragraph (2) the statute requires a person to persuade, induce, entice, coerce, or cause an actual child to engage in "child sexually abusive activity," which is defined as "a child engaging in a listed sex act."  *Id*. § 750.145c(1)(*l*).  Thus, § 750.145c(2) is limited to activities directed at actual, as opposed to virtual, children.  Similarly, the internet communication statute provides that "[a] person shall not use the internet or a computer, computer program, computer network, or computer system to communicate with any person for the purpose of . . . [c]ommitting, attempting to commit, conspiring to commit, or soliciting another person to commit conduct proscribed under section 145a, 145c, 157c, 349, 350, 520b, 520c, 520d, 520e, or 520g, or section 5 of 1978 PA 33, MCL 722.675, in which the victim or intended victim is a minor or is believed by that person to be a minor."  MICH. COMP. LAWS § 750.145d(1).  This statute, too, is directed at actual children.

Sections 750.145c(2) and 750.145d are both solicitation statutes.  They prohibit a person

16

from soliciting a minor to engage in child sexually abusive conduct or conduct which would violate criminal sexual conduct laws relating to minors. It is well-established that a defendant "simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts," *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000), and this rule was not altered by *Free Speech Coalition*. On the contrary, in *Free Speech Coalition* the Court explicitly noted that the government "may enforce criminal penalties for solicitation." *Free Speech Coalition*, 535 U.S. at 252. The courts that have considered similar child solicitation statutes have uniformly found them to be constitutional, even after *Free Speech Coalition*, and even where, as here, the person solicited was actually an adult police officer working undercover as opposed to an actual child. For example, in *United States v. Johnson*, 376 F.3d 689 (7th Cir. 2004), the court upheld against a constitutional challenge 18 U.S.C. § 2251, which similar to § 750.145c(2) makes it a felony to "employ[], use[], persuade[], induce[], entice[], or coerce[] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct." 18 U.S.C. § 2251(a). In language directly applicable here, the court rejected the argument made by petitioner here:

> This case and § 2251 are distinguishable from the provisions at issue in *Free Speech Coalition*. In *Free Speech Coalition*, the provisions at issue involved works where a performer appeared to be, but was not, a minor. The prohibited works included any visual depiction or even a computer-generated image that appeared to be a minor (so-called "virtual pornography"). The producer could have intentionally used an adult performer and actually believed that the performer was an adult-it made no difference; so long as the performer appeared to be a minor, the producer (along with distributors, sellers, buyers, and possessors) had engaged in criminal conduct. Thus, the provisions of the CPPA at issue in *Free Speech Coalition* criminalized the production of works where no performer was a minor and the producers did not believe that any of the producers were a minor. Such is not the case with Johnson. Here the producer, to be guilty of an attempt, must, at least, believe that an intended performer is a minor, as Johnson did.
>
> We also disagree with the gist of Johnson's argument: that an attempt to

17

entice a person whom the producer believes is a minor, but is in fact (but unbeknownst to the producer) an adult, is constitutionally protected free speech. Child pornography is not entitled to the protection of the First Amendment, *New York v. Ferber*, 458 U.S. 747, 764 (1982), and the Supreme Court has recognized that the protection of children from sexual abuse and exploitation is a particularly compelling interest. *Id.* at 757 ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."); *cf. Free Speech Coalition*, 535 U.S. at 244 ("The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people"). In light of Congress's (and the states') legitimate interest in combating child pornography, statutes aimed at criminalizing its production are obviously necessary. The need to criminalize conduct where a producer attempts to manufacture pornography using a person he believes to be a minor is also logically necessary. This time Dena was not real, but real minors deserve protection from predators such as Johnson.

While it is true that a sexually explicit conversation between two adults where one adult asks another adult (and where both adults know or believe the other to be an adult) to perform in non-obscene pornography is protected by the First Amendment, this is not the case here. Nor could it be the case under the terms of the statute. The statute prohibits only an attempt to solicit a person the solicitor believes to be a minor to perform sexually explicit acts. This is prohibited conduct, not protected speech, and as such § 2251 is not overbroad.

*Johnson*, 376 F.3d at 695-96 (parallel citations omitted).

Similarly, in *Alley v. Leis*, No. 1:05-CV-151, 2007 WL 1795299 (S.D. Ohio June 19, 2007), the court explained the uniform conclusion of the courts on this matter. In that case, the court considered an Ohio statute prohibiting use of the internet to solicit sexual activity from a minor. Noting that "there is no First Amendment right to solicit sexual activity from a minor," *id.* at *3 (citing *Bailey*, 228 F.3d at 639), the court explained that this

basic proposition does not change just because a person solicits sexual activity from an adult police officer whom he erroneously believes is a minor. A number of federal courts have addressed this issue with regard to the offense of attempted inducement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), where the target of the inducement is an undercover police officer. The courts of appeal who have addressed this issue have unanimously concluded that § 2244(b) does not violate the First Amendment where no actual minor is involved because the statute only criminalizes conduct, *i.e.*, the inducement of minors to engage in sexual activity. The safeguard against chilling protected speech between adults is that the prosecution must prove that the offender actually believed he was

soliciting or inducing a minor.

*Id.* (citing *United States v. Tykarsky*, 446 F.3d 458, 473 (3d Cir. 2006); *United States v. Meek*, 366 F.3d 705, 721 (9th Cir. 2004); *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004); *United States v. Davis*, 165 Fed. Appx. 586, 588 (10th Cir. 2006)).[5]

As these cases demonstrate, contrary to his argument petitioner "was not punished for mere thought or belief. Rather, he was punished for his intention to solicit a minor which was coupled with conduct acting on his belief. This punishment of intent, plus belief, plus conduct was expressly recognized by the Supreme Court as a lawful exercise of governmental power." *Helle v. Collins*, No. 3:06CV150, 2007 WL 3125139, at *3 (N.D. Ohio Oct. 24, 2007) (citing *Free Speech Coalition*'s discussion of solicitation laws); *see also*, *Peterson v. McLemore*, No. 2:06-CV-220, 2009 WL 1874096, at *10 (W.D. Mich. June 25, 2009) (rejecting First Amendment challenge to § 750.145c(2)); *People v. Adams*, No. 272751, 2008 WL 203653, at *4 (Mich. Ct. App. Jan. 24, 2008) (rejecting overbreadth challenge to § 750.145c(2)); *People v. Cervi*, 270 Mich. App. 603, 620-23, 717 N.W.2d 356, 366-68 (2006) (upholding § 750.145d against free speech challenge, relying on

---

[5]Petitioner's reliance on *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008), is misplaced. *Gladish* did not involve a constitutional challenge to the federal solicitation of a minor statute. Rather, in *Gladish*, the defendant was convicted under the federal solicitation statute based on nothing more than his internet communications with a government agent, whom he believed to be a minor. The court held that the defendant could not be convicted of attempting to violate the statute because he did nothing more than communicate on the internet, and took no "substantial step" beyond the communication to actually complete the underlying offense. *See id.* at 648-49. The court explicitly distinguished "the usual prosecution based on a sting operation for attempting to have sex with an underage girl," as occurred in petitioner's case, in which "the defendant after obtaining the pretend girl's consent goes to meet her and is arrested upon arrival[.]" *Id.* at 648. The court explained that in such a case the defendant can be convicted, because "there is a sufficient likelihood that he would have completed [the crime] to allow a jury to deem the visit to meet the pretend girl a substantial step toward completion, and so the visit is conduct enough to make him guilty of an attempt and not merely an intent." *Id.* at 649. Such are the circumstances here, where petitioner arranged for and arrived at an actual meeting with the person with whom he was communicating.

state and federal cases discussing similar laws and explaining that "the statute at issue does not proscribe words alone, but communication combined with the specific intent to commit or attempt to commit particular crimes against a victim who is or is perceived to be a minor.").

This conclusion is buttressed by the Supreme Court's more recent decision in *Williams*, *supra*. In that case, the Court upheld against an overbreadth challenge 18 U.S.C. § 2252A, a statute prohibiting pandering of child pornography. Specifically, the statute makes it a crime to "advertise[], promote[], present[], distribute[], or solicit[]" either "an obscene visual depiction of a minor engaging in sexually explicit conduct" or "a visual depiction of an actual minor engaging in sexually explicit conduct." 18 U.S.C. § 2252A(a)(3)(B). The Court explained that "[t]he statute's definition of the material or purported material that may not be pandered or solicited precisely tracks the material held constitutionally proscribable in *Ferber* and *Miller*: obscene material depicting (actual or virtual) children engaged in sexually explicit conduct, and any other material depicting actual children engaged in sexually explicit conduct." *Williams*, 553 U.S. at 293. Turning to the question of whether the statute "criminalizes a substantial amount of protected expressive activity," the Court concluded that it did not, explaining that "[o]ffers to engage in illegal transactions are categorically excluded from First Amendment protection." *Id.* at 297. The Court explained that "the rationale for [this] categorical exclusion" is the "principle that offers to give or receive what it is unlawful to possess have no social value and thus, like obscenity, enjoy no First Amendment protection." *Id.* at 298. And, echoing its statement in *Free Speech Coalition*, the Court again explained that "long established criminal proscriptions–such as laws against conspiracy, incitement, and solicitation," *id.*, do not run afoul of the First Amendment.

The principles of *Williams* are equally applicable here. If the First Amendment permits a

law forbidding pandering of contraband material, it must equally permit a law forbidding the solicitation of actual unlawful activity. *See Podracky v. Commonwealth*, 662 S.E.2d 81, 84-86 (Va. Ct. App. 2008). Solicitation of illegal activity is no different from "offers to engage in illegal transactions" which, the Court explained, "are categorically excluded from First Amendment protection." *Williams*, 553 U.S. at 297. And it is no answer to this rule that, in petitioner's case, no actual child was involved. The *Williams* Court rejected the Eleventh Circuit's view that the pandering statute was rendered unconstitutional by the fact that it could apply to a person who mistakenly intends or believes that material is child pornography, when in fact it is not. The Court explained:

> The pandering and solicitation made unlawful by the Act are sorts of inchoate crimes–acts looking toward the commission of another crime, the delivery of child pornography. As with other inchoate crimes–attempt and conspiracy, for example–impossibility of completing the crime because the facts were not as the defendant believed is not a defense. "All courts are in agreement that what is usually referred to as 'factual impossibility' is no defense to a charge of attempt."

*Williams*, 553 U.S. at 300 (quoting WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.5(a)(2) (2d ed. 2003)). So too, here. The Michigan statutes under which petitioner was charged prohibit inchoate crimes akin to attempt and solicitation. That commission of the underlying substantive crime of creating child pornography or sexual assault of a child was factually impossible because the person petitioner was communicating with was not, in fact, a child, is no defense and does not render the Michigan statues unconstitutional.

Under *Williams*, *Free Speech Coalition*, and the array of federal and state cases applying those decisions to statutes similar to the Michigan statutes at issue here, it is clear that the Michigan statutes do not proscribe constitutionally protected speech. Rather, they are statutes which target the solicitation of real sexual offenses against real children. As such, they are not constitutionally

overbroad, and their application to petitioner did not deprive him of his First Amendment right to free speech. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief.[6]

### E. Recommendation Regarding Certificate of Appealability

#### 1. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a

---

[6]In a single sentence in his brief, unaccompanied by any argument, petitioner also asserts that § 750.145c(2) is void for vagueness. Assuming that this claim has been properly presented, it is without merit. Under the void for vagueness doctrine, "[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement" *Williams*, 553 U.S. at 304. Here, the language of § 750.145c(2) does not fail to provide a person of ordinary intelligence fair notice of what is prohibited. "[T]he statute expressly prohibits arranging or planning to do anything sexual with a child. The language used to prohibit the act is not so vague that a person of common intelligence must necessarily guess at its meaning." *Hann v. Harry*, No. 06-CV-13478, 2007 WL 2650731, at *3 (E.D. Mich. Sept. 7, 2007) (Edmunds, J.); *see also, People v. Cobb*, No. 269880, 2007 WL 2429855, at *6 (Mich. Ct. App. Aug. 28, 2007) (per curiam); *People v. Hill*, 269 Mich. App. 605, 525-26, 715 N.W.2d 301, 313-14 (2006); *cf. Tykarsky*, 446 F.3d at 473 (internal quotation omitted) (terms "persuade," "induce," "entice," and "coerce" used in federal child solicitation statute, 18 U.S.C. § 2422(b), are not unconstitutionally vague because "they have a plain and ordinary meaning that does not need further technical explanation" and are "sufficiently precise to give a person of ordinary intelligence fair notice as to what is permitted and what is prohibited and to prevent arbitrary and discriminatory enforcement."); *see also, United States v. Dhingra*, 371 F.3d 557, 562 (9th Cir. 2004) (same). Thus, to the extent that this claim is properly before the Court, it is without merit.

"substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's habeas application, the Court should also conclude that petitioner is not entitled to a certificate of appealability. With respect to petitioner's challenge to his felony-firearm conviction, it is clear that the claim at its core is based on the factual insufficiency of the record to support the charge. In light of the Supreme Court's clearly stated directive in *Tollett*, *Blackledge*, *Menna*, and *Broce* that such collateral challenges are waived by a guilty plea, the conclusion that petitioner's plea bars this claim is not reasonably debatable. Likewise, in light of the language of *Free Speech Coalition* and the Court's decision in *Williams*, and the uniform application of these decisions by state and federal courts to statutory provisions similar to §§ 750.145c(2) and 750.145d, the conclusion that neither statute is constitutionally overbroad or vague is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*,

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of

objections which raise some issues but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health*

*& Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local*

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court. The response shall address

specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 4/30/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on April 30, 2010.

s/Eddrey Butts
Case Manager